NUMBER 13-05-155-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

 

IN RE: S.G., P.G., AND A.R., MINOR CHILDREN

                                             

 

 

                  On appeal from the 267th
District Court

                           of Victoria
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

                Before Justices Yañez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








A jury rendered a
verdict and the trial court entered a judgment that terminated the parental
rights of appellants Michelle Ranjel, Manuel Ranjel, Jr., and Neal Griffin to
the minor children, S.G., P.G., and A.R.[2]  By one issue, the Ranjels charge that
opposing counsel's repeated references to uncharged acts of prostitution
throughout the trial created a substantial and intolerable risk of erroneous
termination of their parental rights.  We
affirm.

I.  BACKGROUND

The jury heard that
the Texas Department of Protective and Regulatory Services took possession of
the minor children due to neglectful supervision and danger to their physical
health and safety.  The Ranjels were cocaine
users.  Mrs. Ranjel used cocaine when she
was pregnant with four of her children. 
The Ranjels used drugs in the back room of the house while the children
were asleep.  Strangers would come to
their house and use drugs while the children were present.  Mrs. Ranjel took S.G. and P.G. to a
department store where she asked customers for money.  When A.R. was born, both Mrs. Ranjel and the
baby tested positive for cocaine.  The
Ranjels rented various places to live and, at one point, lived in motels. 








The jury also heard
that Mrs. Ranjel was prostituting throughout 2003.  She was arrested for criminal trespass in a
motel along with a known prostitute, Belinda Stranek.  At trial, Mrs. Ranjel denied she engaged in
prostitution and denied that Mr. Ranjel ever encouraged her to engage in
prostitution.  She admitted cocaine
use.  Documents admitted in evidence show
her handwritten statements admitting to using cocaine.  From Belinda Stanek, an admitted prostitute,
the jury heard that she met Mrs. Ranjel at a local motel and that, since August
2003, Mrs. Ranjel had engaged in prostitution on a weekly basis.  The two were arrested at the same motel in
November 2003.  Stanek explained that
motels use the charge of criminal trespass to deter prostitution on their premises.  Mr. Ranjel denied knowledge of any
prostitution activity involving Mrs. Ranjel. 
He admitted that on the weekend before trial, he was in Laredo in a
motel with Mrs. Ranjel's sister, a known prostitute.  He testified that he was there on personal
business. 

II.  UNPRESERVED ERROR

The Ranjels argue that
the repeated references to uncharged acts of prostitution constitute
fundamental error, requiring reversal of the judgment of termination.  The
Ranjels failed to make a timely request, objection, or motion before the trial
court on these grounds.  See Tex. R. App. P. 33.1.  Accordingly, we first determine whether our law
on preservationBincluding our rules of
procedure and our common‑law doctrine of fundamental errorBpermit review of this
complaint.  In the Interest of B.L.D.,
113 S.W.3d 340, 349 (Tex. 2003).








Requiring parties to
raise complaints at trial conserves judicial resources by giving trial courts
an opportunity to correct an error before an appeal proceeds.  Id. at 350.  Additionally, preservation rules promote
fairness among litigants.  Id.  A party "should not be permitted to
waive, consent to, or neglect to complain about an error at trial and then surprise
his opponent on appeal by stating his complaint for the first time."  Id. (citing Pirtle v.
Gregory, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam)). Moreover, we
further the goal of accuracy in judicial decision‑making when lower
courts have the opportunity to first consider and rule on error.  Id.  Not only do the parties have the opportunity
to develop and refine their arguments, but we have the benefit of other
judicial review to focus and further analyze the questions at issue.  Id.  Accordingly, we follow our procedural rules,
which bar review of this complaint, unless a recognized exception exists.  Id.  

A limited exception to
our procedural preservation rules is the fundamental error doctrine.  B.L.D., 113 S.W.3d at 349 (citing Ramsey
v. Dunlop, 205 S.W.2d 979, 982‑83 (Tex. 1947)). Historically, the
term "fundamental error" is used to describe situations in which an
appellate court may review error that was neither raised in the trial court nor
assigned on appeal.  See id. (citing
McCauley v. Consol. Underwriters, 304 S.W.2d 265, 266 (Tex. 1957) (per
curiam)).  In light of the strong policy
considerations favoring preservation, the Supreme Court has called fundamental
error "a discredited doctrine." 
B.L.D., 113 S.W.3d at 349 (citing Cox v. Johnson, 638
S.W.2d 867, 868 (Tex. 1982) (per curiam)). 
Accordingly, because termination cases do not apply criminal procedural
or evidentiary rules (that are only applicable to criminal cases), they do not
necessarily incorporate the concomitant criminal fundamental error
doctrine.  B.L.D., 113 S.W.3d at
351.  Because the Ranjels did not present
their current complaint to the trial court, they did not preserve error for our
review.  See id. 








Nevertheless, even if
the Ranjels had properly objected and preserved the error, the error was not
harmful and thus would not be reversible error. 
Id.  Ordinarily, we review a trial court's rulings on admitting or
excluding evidence under an abuse of discretion standard.  Horizon/CMS Healthcare Corp. v. Auld,
34 S.W.3d 887, 906 (Tex. 2000); Owens‑Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex. 1998). 
We may reverse a trial court's judgment based on an error in the
admission or exclusion of evidence only if we conclude that (1) the trial court
did in fact commit error and (2) the error was reasonably calculated to cause
and probably did cause the rendition of an improper judgment.  See Tex.
R. App. P. 44.1(a); Gee v.
Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); Capital
Metro. Transp. Auth. v. Central of Tennessee Ry. and Navigation Co., Inc.,
114 S.W.3d 573, 583 (Tex. App.BAustin 2003, pet.
denied). 








In cases where the
complained-of error involves an evidentiary ruling, the reviewing court
examines the whole record to determine if the complaining party was harmed by
the erroneous admission or exclusion.  In
the Interest of M.S., 115 S.W.3d 534, 538‑39 (Tex. 2003).  Thus, it was the Ranjels' burden to show that
they were prejudiced by the admitted evidence. 
See id.  Accordingly, we
need not decide whether the trial court erred in admitting the testimony
regarding prostitution because the evidence was merely cumulative of other
evidence admitted before the jury as grounds for termination.  The erroneous admission of evidence that is
merely cumulative of properly admitted testimony is harmless error.  Gee, 765 S.W.2d at 396; McInnes v.
Yamaha Motor Corp. U.S.A., 673 S.W.2d 185, 188 (Tex.1984), cert. denied,
469 U.S. 1107 (1985). 

III. CONCLUSION

We overrule the sole
issue presented.  We affirm the trial
court judgment terminating the parent-child relationship.

 

ERRLINDA CASTILLO

Justice

 

Memorandum
Opinion delivered and filed

this
the 4th day of August, 2005.

 

 

 

 











[1] See Tex. R. App. P. 47.2, 47.4.





[2] Neal Griffin did not appeal.  He was sued as the biological father of S.G.
and P.G.  Mr. Ranjel was sued as the
putative father of A.R.  See Tex. Fam.
Code Ann. _ 160.204(a)(1) (Vernon 2004-05)
("A man is presumed to be the father of a child if he is married to the
mother of the child and the child is born during the marriage.").  Mr. Ranjel admitted that DNA testing
eliminated him as the biological father of A.R.